# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **REGINALD JOHNSON,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )     **CIVIL ACTION 12-0334-WS-M** |
| | ) |
| **RANDALL CHAMPIONS,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter comes before the Court on plaintiffs' "Leave for a Motion to Determine who among the Parties of this Litigation has the Superior Title to the Property" (doc. 97), defendant City of Satsuma's Motion for Summary Judgment (doc. 99), the Harless defendants' Motion for Summary Judgment (doc. 104), and the Harless defendants' Motion for Partial Summary Judgment (doc. 105). These Motions have been extensively briefed and are now ripe for disposition.[1]

### I.    Nature of the Action.

Plaintiffs, Reginald Johnson and Shirley A. Johnson-Young, siblings who are proceeding *pro se*, brought this action asserting claims for federal civil rights violations (among others)

---

[1]    Defendants' exhibits include complete copies of certain transcripts, rather than simply the relevant portions. Pursuant to Local Rule 5.5(c), "If discovery materials are germane to any motion or response, ***only the relevant portions of the material shall be filed***." (*Id.* (emphasis added).) The Court will not sift through uncited materials in hopes of unearthing factual nuggets that might prove helpful to one side or the other. *See* Rule 56(c)(3), Fed.R.Civ.P. (on summary judgment, "[t]he court need consider only the cited materials"). In a cover letter, the Harless defendants explained that they were including the full transcripts to ensure that they had all necessary evidentiary material for their forthcoming reply brief; however, the proper procedure under Local Rule 5.5(c) is to include only the relevant excerpts with the principal brief and then to supplement that submission with any additional excerpts necessary to exposition of the reply brief, rather than preemptively filing complete transcripts upfront on the possibility that some as-yet uncited portion might become important later on.

against defendants, City of Satsuma (the "City"), MKH Properties, LLC ("MKH" or "MKH Properties") and Maurice Kirk Harless ("Harless").[2]

In their Amended Complaint (doc. 17), plaintiffs allege that defendant Harless (who owns property adjacent to plaintiffs' family's property) had erected an "illegal barricade that prevented and impeded" access to the front of plaintiffs' family home. (*Id.* at ¶¶ 8-9.) Plaintiffs allege that the City allowed this barricade to stand, that MKH and/or Harless caused Hilliard Drive (the road abutting the front of plaintiffs' family home) to be closed and instead constructed a road to access the home from the back, that defendants illegally moved a U.S. mailbox servicing the home, that the City turned a blind eye to plaintiffs' pleas for help, and that plaintiff Shirley A. Johnson-Young ("Johnson-Young") ultimately removed said barricade. (*Id.* at ¶¶ 8-25.)[3] After the barricade was destroyed, the Amended Complaint alleges, plaintiffs were arrested by a City police officer, taken to the City jail, and charged with second-degree criminal mischief. (*Id.* at ¶¶ 28-34.) At trial, plaintiff Reginald Johnson ("Johnson") was acquitted of those charges, but plaintiff Johnson-Young was found guilty. (*Id.* at ¶¶ 45-46.)

On the basis of these asserted facts, plaintiffs purported to bring the following claims and causes of action in their Amended Complaint: (i) a federal constitutional claim of false arrest and false imprisonment against Randall Champions (the City police officer who took them into

---

[2] Plaintiffs' pleadings also named as defendants Randall Champions (a police officer for the City of Satsuma Police Department), "City of Satsuma Officials – names unknown," City of Satsuma Police Department, and "City of Satsuma Roads/Zoning Employees – names unknown." (Doc. 17, at 2.) By Order (doc. 54) dated February 5, 2013, the undersigned dismissed the unnamed city officials and municipal employees pursuant to the federal prohibition against fictitious-party pleading. The February 5 Order also dismissed the Satsuma Police Department because the Amended Complaint failed to state a claim against that entity. By Order (doc. 121) dated October 30, 2013, the undersigned granted plaintiffs' request for voluntary dismissal of their claims against defendant Champions. The remaining defendants are the City, MKH and Harless.

[3] In presenting these allegations, the Amended Complaint is awash in inflammatory rhetoric. For example, plaintiffs allege that the barricade "creat[ed] Apartheid like conditions for the Plaintiffs," that it resulted in "Minority class members (African Americans) oppressed by the dominant society members," that "Physical barriers separates [*sic*] the minority and dominant classes … so that my family members do not contaminate the Anglo community," and that "all services are rendered at our back door" whereas other members of the community receive services at their front doors. (Doc. 17, ¶ 27.)

custody, transported them to jail, and processed paperwork for the criminal charges) (Count I); (ii) a claim against all defendants under 42 U.S.C. § 1981 for "denial and interference of Equal Protection of the Law" (Count II); (iii) an equal protection claim against all defendants under 42 U.S.C. § 1983, alleging that plaintiffs are a "class of one" (Count III); (iv) a § 1983 claim against all defendants for an unspecified "deprivation of rights" (Count IV); (v) a § 1983 claim against all defendants for "conspiracy against rights," again without specifying the rights at issue (Count V);[4] and (vi) a claim for violation of 18 U.S.C. § 1705 against all defendants for "tampering with the plaintiff's [*sic*] family's U.S. Mailbox" (doc. 17, ¶ 61) by moving it to the back of the home (Count VI).

In a responsive pleading filed on May 1, 2013, defendant MKH requested Rule 11 and "inherent powers" sanctions against plaintiffs. (Doc. 70, at 10-11.) As grounds for these requests, MKH insisted that plaintiffs' claims are "frivolous" and "without substantial justification," and that plaintiffs are pursuing them in bad faith. (*Id.*) On that basis, MKH sought an award of attorney's fees and an injunction imposing prospective restrictions on filings by Reginald Johnson and Shirley Johnson-Young. In that same pleading, MKH asserted state-law counterclaims against plaintiffs for breach of contract (alleging that the filing of this action breaches a settlement agreement previously entered into by MKH and Johnson), trespass (alleging that Johnson and Johnson-Young trespassed on MKH's property in late November 2009, when they destroyed MKH's privacy fence with a chainsaw and sledgehammer), conversion (alleging that Johnson and Johnson-Young committed conversion by destroying MKH's fence), trespass (alleging that Johnson and Johnson-Young trespassed on MKH's property in September 2012 and cut a road from Parcel A across two adjacent lots in Parcel B), and civil conspiracy (alleging that Johnson and Johnson-Young engaged in concerted action to commit the above-described torts).

The City, MKH and Harless have now moved for summary judgment on all of plaintiffs' claims. Plaintiffs and MKH/Harless have filed cross-motions for partial summary judgment relating to certain of MKH's counterclaims.

---

[4] A propos of nothing, plaintiffs also cite in Count V the federal criminal statute for misprision of a felony, found at 18 U.S.C. § 4, and appear to suggest it has some unspecified bearing on their "conspiracy against rights" claim. It does not.

II.    **Factual and Procedural Background.**[5]

   *A.    Basic Facts Concerning the Subject Real Property.*

Plaintiffs are a brother and sister who reside in Houston, Texas. (Johnson-Young Dep. (doc. 101, Exh. 2), at 105; Johnson Dep. (doc. 101, Exh. 5), at 45.) Plaintiffs' parents owned and resided on a five-acre tract of real property (referred to in the record as "Parcel A") in the police jurisdiction of Satsuma, Alabama, near the intersection of Interstate 65 and Highway 43, until their deaths in 1988 and 2000. Parcel A remains in the Johnson family, and it is undisputed that Johnson and Johnson-Young possess an ownership interest in said property.[6] At all relevant times, a single-family dwelling has stood on Parcel A. Adjacent to Parcel A is a 28-acre tract of land known as "Parcel B," which historically was unoccupied but was crisscrossed with dirt trails, some of which were used as roads to access nearby tracts, including Parcel A. (Harless Decl. (doc. 104, Exh. 1), ¶ 5.) One of those thoroughfares was known as Hilliard Drive and provided access to the front of the Johnson family home on Parcel A. (Johnson-Young Dep., at 95-97.)

Prior to the year 2000, Parcel B was owned by nonparty Gilbert Leasing Company, Inc. Based on a dispute with Rosemary Johnson (the mother of Johnson and Johnson-Young), Gilbert Leasing initiated a lawsuit in 1997 to quiet title to the property.[7] Such litigation was styled

---

[5]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). With respect to defendants' summary judgment motions, then, plaintiffs' evidence is taken as true and all justifiable inferences are drawn in their favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[6]    That said, neither plaintiff resided at the family home on Parcel A at any relevant time. (Johnson-Young Dep., at 105; Johnson Dep., at 45.)

[7]    According to the complaint filed in that case, Reginald Johnson (plaintiff in the case at bar) had prepared multiple instruments in 1986 and 1987 that purported to convey all or part of Parcel B from his father (Ernest Johnson) to his mother (Rosemary Johnson), and had recorded such instruments in the Probate Court of Mobile County, Alabama. (Doc. 104, Exh. 4, (Continued)

*Gilbert Leasing Company, Inc. v. Rose Mary Johnson, et al.*, Civil Action CV-97-3705-EBM (the "*Gilbert* Action"), and was filed in Mobile County Circuit Court. (Doc. 104, Exh. 4.)[8] Johnson and Johnson-Young actively participated in the *Gilbert* Action. They filed pleadings, gave depositions, attended court, and otherwise considered themselves to be parties. (Johnson-Young Dep., at 42-43, 57; doc. 104, Exhs. 6-9, 11-13.) On July 6, 1998, Circuit Judge Edward B. McDermott entered a Judgment (doc. 104, Exh. 14) in the *Gilbert* Action (the "1998 Judgment"), finding that the deeds prepared by Reginald Johnson purporting to convey interest in Parcel B from Ernest Johnson to Rosemary Johnson "did not, in fact, vest in her any interest in the subject property." (*Id.*, ¶ 2.)[9]

The *Gilbert* Action having resolved all questions of title to Parcel B, Gilbert Leasing sold the tract of land to defendant MKH Properties, LLC in December 2000. (Harless Decl., ¶ 3 & Exh. 2.) MKH (whose sole member is defendant Maurice Kirk Harless) proceeded to develop a 49-lot residential subdivision (inclusive of roads and sidewalks) called Gilbert Creek Estates on Parcel B. (Harless Decl., ¶ 6.) The subdivision's restrictive covenants called for the entire subdivision to be enclosed by a wooden privacy fence. (*Id.*, ¶ 7.)

In October 2003, after the subdivision had been completed with paved streets, MKH erected a wooden perimeter fence, with such fence being placed entirely within the boundaries of

---

¶¶ 5, 7.) Gilbert Leasing's position was that Parcel B belonged to it, such that the purported conveyance and instruments prepared by Reginald Johnson were invalid.

[8]     Although the defendant's name in the *Gilbert* Action was recited as "Rose Mary Johnson," all parties here consistently call her "Rosemary Johnson." Therefore, the Court adheres to the convention of referring to Ms. Johnson as "Rose Mary" when quoting pleadings or orders from the *Gilbert* Action, but otherwise referring to her as "Rosemary," just as the parties herein do.

[9]     The 1998 Judgment further reflected that an extension built onto Rosemary Johnson's home on Parcel A encroached onto Parcel B by 11 feet on the north side of the extension, and 8 feet on the south side. (Doc. 104, Exh. 14, ¶ 5.) To resolve this issue, the 1998 Judgment memorialized Gilbert Leasing's agreement to give Rosemary Johnson a license, personal to her and expiring upon her death, to allow the encroachment of her home onto Parcel B. The 1998 Judgment specified that, pursuant to this license, Rosemary Johnson "acquires no title to the real property under the said encroachment during her lifetime, nor do her heirs or assigns." (*Id.* at 3.)

Parcel B.  (Johnson-Young Dep., at 94; doc. 101, Exh. 1, at 99-101; Harless Decl., ¶ 11.)
Plaintiffs found this event traumatic and upsetting.  MKH caused a truck to block Hilliard Drive,
then caused stakes or posts to be placed in Hilliard Drive, blocking traffic in or out.  (Johnson-
Young Dep., at 80-81.)  On each occasion, plaintiffs or their family members called the Satsuma
Police Department, and City police officers visited the property and required MKH to remove
the obstruction.  (*Id.*)  But then MKH caused a mound of dirt to block Hilliard Drive, closed the
road altogether, and constructed the fence, effectively cutting off the front of the Johnson family
home on Parcel A from being accessed via Hilliard Drive.  (*Id.*)  As an accommodation, MKH
graded, straightened and widened a driveway on Parcel B from Powers Road to the rear of the
Johnson family home, to allow access to the home.  (Harless Decl., ¶ 8; doc. 104, Exhs. 27 &
28.)[10]  MKH also caused the mailbox servicing the Johnson family home to be moved from the
front of the house (where it was no longer accessible to the U.S. Postal Service because of the
closure of Hilliard Drive) to the back of the house (where the USPS could access it via Powers
Road and the expanded driveway).  (Johnson-Young Dep., at 81, 95-96.)  Plaintiff Johnson-
Young testified that MKH blocked off Hilliard Drive "without the City of Satsuma's permission
to close us off."  (*Id.* at 96.)  Hilliard Drive was thereby blocked and encompassed in the Gilbert
Creek Estates subdivision.  (*Id.* at 97.)  All of these events occurred in 2003, some nine years
before Johnson and Johnson-Young commenced the instant lawsuit.  (*Id.* at 94, 105; Harless
Decl., ¶ 11.)

---

[10]     When it built the perimeter fence around the subdivision, MKH also addressed the
encroachment issue identified in the 1998 Judgment.  (Again, an extension on the Johnson family
home on Parcel A encroached by several feet over the Parcel B property line.)  The license that
Gilbert Leasing conveyed to Rosemary Johnson had lapsed by its terms because she was
deceased.  Yet the house continued to encroach onto Parcel B.  Rather than enforcing its rights
by ejecting the Johnsons or building the fence on the property line (which would have run it
through the Johnson home), MKH set the fence back 25 feet onto Parcel B, and relinquished any
right of ownership to the resulting 25-foot strip of property between the fenceline and the
boundary of Parcel A.  (Harless Decl., ¶¶ 8-9.)  Incidentally, this 25-foot strip of "no man's land"
encompasses the driveway that MKH graded and widened to allow access to the Johnson family
home from Powers Road.  (*Id.*)  The fence itself is entirely on Parcel B, even after accounting for
the 25-foot strip.

### B. Plaintiffs' Litigation History Regarding Parcel B.

For whatever reason, Johnson and Johnson-Young refused to accept the 1998 Judgment that their family owned no right or interest in Parcel B. To that end, they have brought at least four lawsuits (not counting the case at bar) against MKH, the City of Satsuma, and others to contest the very same property ownership issues underlying their Complaint in this case. As discussed below, each of these previous civil actions ended with an unfavorable disposition to Johnson and Johnson-Young.[11]

In 1999, Reginald Johnson sued Gilbert Leasing and a company called Harless/Stokke, Inc. in this District Court, in an action styled *Reginald Johnson v. Gilbert Leasing, Inc. and Harless/Stokke, Inc.*, Civil Action 99-0574-CB-M (the "1999 Lawsuit"). Johnson essentially sought to overturn the 1998 Judgment by requesting a judicial declaration that the defendants had no interest in Parcel B and seeking defendants' ejectment from same. On April 12, 2000, Judge Butler entered an Order granting summary judgment to the defendants and dismissing Johnson's claims in their entirety. (Doc. 101, Exh. 8.) In that Order, Judge Butler found that the 1999 Lawsuit was barred by the doctrine of res judicata because the legal issues raised by Johnson had already been fully and finally litigated in the *Gilbert* Action. Johnson appealed; however, the Eleventh Circuit dismissed the appeal on June 27, 2000 for want of prosecution.

In 2001, Shirley Johnson-Young sued MKH Properties and Harless in the Circuit Court of Mobile County, Alabama, in an action styled *Shirley A. Johnson-Young and Viola Shaw v. MKH Properties, et al.*, Case No. CV-01-4105-51 (the "2001 Lawsuit"). The premise of this action was, once again, that plaintiffs and not MKH or Harless actually owned Parcel B. On

---

[11] Most of the facts set forth herein concerning plaintiffs' other lawsuits about Parcel B are gleaned from the summary judgment record. For the remaining facts, the Court takes judicial notice of official records maintained by the Clerk of Court with respect to those other judicial proceedings, for the limited purpose of establishing the fact of such litigation and related filings. *See, e.g., United States v. Glover*, 179 F.3d 1300, 1303 n.5 (11th Cir. 1999) ("A court may take judicial notice of its own records and the records of inferior courts."); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("a court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation"); *Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases.").

February 13, 2002, Circuit Judge James C. Wood entered a one-paragraph Order granting summary judgment to the defendants on all claims.  (Doc. 101, Exh. 9.)

In 2004, Reginald Johnson returned to federal court to file another *pro se* lawsuit, this time against the City of Satsuma.  That action, which was styled *Reginald Johnson v. City of Satsuma*, Civil Action No. 04-0445-CG-M (the "2004 Lawsuit"), involved civil rights claims that the City had violated Johnson's constitutional rights by allowing MKH and/or Harless to build a subdivision on Parcel B, which Johnson claimed was his property.  Johnson maintained that the City's conduct was motivated by invidious race discrimination.  On March 30, 2007, Judge Granade entered an Order granting the City's motion for summary judgment.  (Doc. 101, Exh. 10.)  In so doing, she reasoned that Johnson's claims raised in the 2004 Lawsuit were barred by the doctrine of res judicata because, *inter alia*, "a judgment on the merits on the question of whether plaintiff has any claim to the property in question has been rendered not once, but twice: first in the state court action and again by this court as set forth in Judge Butler's ruling in Civil Action No. 99-0574."  (*Id.* at 6.)  Judge Granade made a specific finding that "plaintiff has no protectable interest in the real property at issue in this case."  (*Id.* at 7.)  Furthermore, she rejected Johnson's argument that the 1998 Judgment did not apply to him because he was not a party to the *Gilbert* Action, finding that Johnson's "interests were represented to such an extent that there is a substantial identity of the parties" for res judicata purposes.  (*Id.* at 6 n.2.)  Johnson did not appeal the adverse judgment in the 2004 Lawsuit.

In 2005, Reginald Johnson commenced yet another lawsuit about Parcel B in federal court, this one styled *Reginald Johnson v. Marilyn E. Wood, et al.*, Civil Action No. 05-0391-KD-B (the "2005 Lawsuit").  The 2005 Lawsuit became a five-year saga spanning 296 pleadings.  While comprehensive discussion of the 2005 Action would carry us far afield, a fair synopsis is as follows: Johnson's pleadings alleged that MKH had acquired Parcel B based on a "fraudulent transfer of property" and "racially discriminatory deprivation of rights," and that Johnson's rights to Parcel B had been deprived "by State sanctioned race discrimination." Johnson alleged that these actions were violative of the Fourth, Fifth and Fourteenth Amendments.  MKH brought counterclaims against Johnson on grounds of slander of title, among others.  On December 5, 2006, Judge DuBose entered an Order finding that Johnson's claims of constitutional violations by MKH "must fail" because "Johnson lacks standing to assert any claim against MKH Properties under 42 U.S.C. § 1981 on the basis of the contract by which

MKH Properties acquired title to Parcel B," and alternatively any such claims were obviously time-barred. (Doc. 101, Exh. 11, at 16-19 & n.30.) On that basis, Johnson's claims against MKH were dismissed. (*Id.* at 20.)

On January 17, 2007, Judge DuBose entered an Order finding that "this Court has no authority to overrule the 1998 state court judgment" and that Johnson's constitutional claims against the Mobile County Revenue Commissioner failed as a matter of law because he "is unable to show that he has a legitimate interest in the property at issue," inasmuch as "the deed upon which he bases his entitlement to [Parcel B] was voided in the 1998 quiet title action." On January 3, 2007, Judge DuBose entered an Order rejecting Johnson's argument that MKH's "title to the disputed property is based on a 'fraudulent transfer.'" On February 12, 2007, Magistrate Judge Bivins denied Johnson's "Motion for the Court to Determine Which Party Has Marketable Record Title" to Parcel B, concluding that "title to the subject property has already been determined" via the 1998 Judgment, the 1999 Lawsuit, and Judge DuBose's previous orders in the 2005 Lawsuit. (Doc. 101, Exh. 12, at 1-2.) A jury trial was held in March 2007 as to MKH's counterclaim. The jury found Johnson liable for slander of title, and awarded compensatory damages to MKH in the amount of $36,500, plus $50,000 in punitive damages. In April 2007, Judge DuBose also entered a permanent injunction against Johnson and Johnson-Young "from filing, in Mobile County Probate Court, any complaint, claim for relief, grievance, writ, petition, accusation, affidavit, charge or any other document with respect to" Parcel B. (Doc. 101, Exh. 13, at 11-12.) Johnson appealed unsuccessfully to the Eleventh Circuit.[12]

---

[12] There was a postscript to the 2005 Lawsuit. On three separate occasions, MKH moved to reopen the proceedings and sought contempt sanctions based on alleged violations of the permanent injunction. On the first two of those occasions, MKH withdrew its motions after reaching settlement with Johnson. Pursuant to that negotiated settlement, Reginald Johnson executed a Quitclaim Deed on February 11, 2009, in which he released, quit-claimed and conveyed any right, title, interest and claims he had or might have to Parcel B to MKH. That Quitclaim Deed was recorded in the Mobile County Probate Court on March 24, 2009. (Doc. 104, Exh. 26.) Notwithstanding this Quitclaim Deed, in March 2010 MKH reinstituted contempt proceedings against Johnson based on allegations that he had caused to be filed a new affidavit of forgery concerning Parcel B in Mobile County Probate Court in May 2009. Judge DuBose conducted multiple hearings and, on October 1, 2010, entered an Order declining to find Johnson in civil contempt (based on a lack of proof that Johnson had assisted the family member who actually filed the affidavit of forgery in 2009); however, she did find two other family member non-parties to be in contempt of the permanent injunction. (Doc. 104, Exh. 23.)

### C.      Plaintiffs' Arrest and Prosecution for Criminal Mischief.

Against this backdrop of numerous unsuccessful lawsuits, Johnson and Johnson-Young turned to self-help remedies with respect to the perimeter fence on Parcel B. On November 25, 2009, Harless was contacted by a person who identified himself as Roosevelt Johnson.[13] The caller notified Harless that Reginald Johnson and Shirley Johnson-Young were tearing down the perimeter fence at Gilbert Creek Estates. (Harless Decl., ¶ 13.) Harless traveled to the parcel and observed that approximately 250 feet of the fence had been cut down, in two places. (*Id.*, ¶ 14.) During his inspection of the damage, Harless spoke with a person named Fletcher Johnson, who is plaintiffs' brother and resides on Parcel A. (*Id.*, ¶ 15; doc. 125, at 17.) Fletcher Johnson reported to Harless that he had seen plaintiffs destroy the fence. (Harless Dec., ¶ 15.)

Armed with this information, Harless went to the City of Satsuma on November 30, 2009, and reported the incident to City police officer Jonathan Forister, who prepared an Alabama Uniform Incident/Offense Report to document Harless's statement. (Forister Aff. (doc. 101, Exh. 4), ¶ 3 & Exh. A.) On April 26, 2010, Harless went to Satsuma City Hall to make a complaint against Johnson and Johnson-Young for destroying his fence. (Harless Decl., ¶16.) City Magistrate Lisa Cooper spoke with Harless, reviewed Officer Forister's report, examined photographs taken by Harless before and after the destruction of the fence, and determined that there was probable cause to issue a complaint and arrest warrant against Johnson and Johnson-Young for the charge of criminal mischief second degree. (Cooper Aff. (doc. 101, Exh. 3), ¶¶ 3-4.) Harless signed the complaints, and Cooper issued the corresponding arrest warrants. (*Id.*, ¶¶ 4-6.)

The task of executing the arrest warrants fell on City of Satsuma police officer Randall Champion, who was formerly a defendant in this case.[14] On June 4, 2010, Officer Champion received information that Johnson and Johnson-Young were at federal court in Mobile (where they were appearing before Judge DuBose for a contempt hearing in the 2005 Lawsuit, as

---

[13]      Johnson-Young and Johnson have a brother named Roosevelt Johnson. (Johnson-Young Dep., at 10.)

[14]      In the style and body of their pleadings, plaintiffs have spelled this officer's last name "Champions," and the Court has deferred to their designation as to the case caption. However, the witness's own affidavit and signature consistently spell his name "Champion," without the "s." The discrepancy is not material.

discussed *supra*). (Champion Aff. (doc. 101, Exh. 6), ¶ 3.) So he traveled to the federal courthouse to execute the warrants. (*Id.*) U.S. Marshal's Service agents detained plaintiffs after their appearance before Judge DuBose, until such time as Officer Champion arrived to take them into custody and transport them to the City of Satsuma. (Johnson-Young Dep., at 90; Johnson Dep., at 44.) Johnson-Young characterized Officer Champion as "a nice man" who picked them up at federal court, transported them to Satsuma, completed paperwork, and released them when they posted bond. (Johnson-Young Dep., at 91-92.) Plaintiffs do not contend that Officer Champion engaged in any impropriety in the manner in which he conducted their arrest and short-lived detention in the City of Satsuma. (*Id.* at 91; Johnson Dep., at 44.)

Johnson-Young was found guilty of the offense of criminal mischief second degree in the City of Satsuma Municipal Court on March 24, 2011. (Cooper Aff., ¶ 7 & Exh. G.)[15] She appealed to the Circuit Court of Mobile County, where she was again found guilty after a jury trial over which Circuit Judge Robert Smith presided on November 13, 2012. (Johnson-Young Dep., at 93.) During that trial, Johnson-Young's brother, Fletcher Johnson, testified that he had observed Reginald Johnson and Shirley Johnson-Young destroying the privacy fence on Parcel B, using "[c]hainsaws and hammers." (Doc. 101, Exh. 1, at 104.) Fletcher Johnson also testified that he had heard his sister confess to the destruction of the fence. (*Id.* at 105.) For his part, Fletcher Johnson (who lives year-round on Parcel A) indicated that he liked the MKH/Harless fence because "[i]t gives me privacy and protection." (*Id.*) Shirley-Young's appeal of her conviction to the Alabama Court of Criminal Appeals remains pending. (*Id.* at 93-94.)

## III.    Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact

---

[15]    On the same date, Reginald Johnson was found not guilty of the same offense. (Cooper Aff., ¶ 7 & Exh. H.) Although the summary judgment record does not explain the different outcomes, it appears that Johnson denied having destroyed the fence while Johnson-Young admitted having done so. Johnson-Young's admission is reiterated in plaintiffs' Amended Complaint in this lawsuit, where plaintiffs allege that "Johnson-Young removed the illegal barricade that prevented and impeded the ingress-egress/access to the front of our family's home." (Doc. 17, ¶ 8.)

that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to

show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make

'a sufficient showing on an essential element of her case with respect to which she has the burden

of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v.

Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party

has met its burden, the court must stop short of weighing the evidence and making credibility

determinations of the truth of the matter. Instead, the evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-

Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).

"Summary judgment is justified only for those cases devoid of any need for factual

determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987)

(citation omitted).[16]

## IV.    Analysis of Overarching Res Judicata Issue.

As noted *supra*, plaintiffs' claims in this case sound in federal statutory and constitutional

theories, including false arrest, violation of equal protection (including race discrimination and

"class of one" variants), deprivation of unspecified rights, conspiracy to deprive plaintiffs of

unspecified rights and privileges, and violation of 18 U.S.C. § 1705 (destruction of letter boxes

or mail). All or most of these claims are firmly rooted in the premise that plaintiffs own Parcel

B, such that MKH was not entitled to build a privacy fence blocking the front of the Johnson

---

[16]    In evaluating the pending summary judgment motions, the Court remains
cognizant of plaintiffs' *pro se* status. "*Pro se* pleadings are held to a less stringent standard than
pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v.
United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Nonetheless, even *pro se* litigants must
comply with procedural rules and court orders. *See, e.g., Albra v. Advan, Inc.*, 490 F.3d 826, 829
(11th Cir. 2007) (explaining that "we are to give liberal construction to the pleadings of *pro se*
litigants," but that "we nevertheless have required them to conform to procedural rules") (citation
omitted); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (a *pro se* party "is subject to the
relevant law and rules of court, including the Federal Rules of Civil Procedure," and may be
sanctioned "for failure to comply with court orders"); Local Rule 83.9(b). Despite the leniency
afforded *pro se* litigants, this Court may not serve as *de facto* counsel for them, rewrite their
filings, or articulate arguments for them to help them navigate past defendants' Rule 56
challenges. *See GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th
Cir. 1998).

family home and plaintiffs were therefore entitled to go onto Parcel B to tear it down.[17]  Stated differently, plaintiffs' claims are predicated on the fundamental notion that the Harless defendants had no right to block ingress and egress via Parcel B to the front of the Johnson family home because plaintiffs owned some sort of right-of-way, driveway or other legally cognizable property interest in Parcel B.[18]

> ### A.    As Multiple Courts Have Found, All Elements of Res Judicata are Present.

Defendants correctly invoke res judicata as a cornerstone of their summary judgment filings.  The doctrine of res judicata (or claim preclusion) forbids Johnson and Johnson-Young from asserting causes of action against defendants that would entail relitigation of the issue of ownership / property rights in Parcel B.  Under Alabama law, the elements of res judicata are "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both

---

[17]    We know that plaintiffs' claims rest on this premise because they have said so repeatedly.  Approximately 3½ pages of the statement of facts in the Amended Complaint focus on the purported "illegal barricade" that MKH and/or Harless caused to be erected (*i.e.*, the privacy fence on Parcel B) and that the City of Satsuma allowed to stand.  (Doc. 17, ¶¶ 9-27.)  Of course, the fence was only "illegal" if MKH lacked ownership of Parcel B, such that it could not lawfully build a fence on it.  Similarly, in Count III of the Amended Complaint (equal protection claim), plaintiffs again point to "barricaded ingress and egress … and the indifference of all who knew of and participated in this conspiracy." (*Id.*, ¶ 55.)  And plaintiffs' summary judgment briefs lean heavily on their contention that they are the true and rightful owners of Parcel B as the reason why defendants' Rule 56 motions should be denied and plaintiffs' should be granted. (Doc. 125, at 3-18; doc. 127, at 2-17; doc. 132, at 2, 6-15.)  The clearest indication that plaintiffs' claims in this case rest on their purported ownership of Parcel B is found at document 97, which plaintiffs style as "Leave for a Motion to Determine Who among the Parties of this Litigation Has the Superior Title to the Property as Shown by Legal Evidence ***This Property Being the Benchmark of this Litigation, and the Proximate Cause of the Constitutional Violations*** Imbued in the Original Complaint." (Doc. 97, at 1 (emphasis added).)  In that filing, plaintiffs characterize the issue of title to Parcel B as "the basis of the constitutional violations itemized in the original Section 1983 complaint." (*Id.*, ¶ 10.)

[18]    For example, the false arrest/false imprisonment claim (Count I) proceeds from the notion that Johnson and/or Johnson-Young could destroy MKH's privacy fence with impunity because it was on plaintiffs' property.  The constitutional deprivation claims (Counts II through V) all appear rooted in plaintiffs' belief that defendants trampled their property rights by building the perimeter fence on Parcel B and refusing to do anything when plaintiffs complained.  If plaintiffs have no rights in Parcel B, then those causes of action would melt away for want of any kind of deprivation to Johnson or Johnson-Young.

actions." *Jefferson County Com'n v. Edwards*, 32 So.3d 572, 581 (Ala. 2009) (citation omitted). "If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation." *Id.* (citation omitted).

Just as Judge Butler found in the 1999 Lawsuit, and as Judge Granade found in the 2004 Lawsuit, and as Judges DuBose and Bivins found in the 2005 Lawsuit, the 1998 Judgment entered in the *Gilbert* Action is entitled to preclusive effect that bars Johnson and Johnson-Young from litigating claims of an ownership interest or property rights in Parcel B in this action. The 1998 Judgment is unquestionably a prior judgment on the merits rendered by a court of competent jurisdiction.[19]

Moreover, although the *Gilbert* Action was brought nominally against Rosemary Johnson (and not her children Reginald Johnson and Shirley Johnson-Young) to quiet title in Parcel B, the "substantial identity of the parties" element was satisfied for at least three reasons. First, the record contains considerable evidence that Reginald Johnson and Shirley Johnson-Young actively and extensively participated in the *Gilbert* Action by filing pleadings, giving depositions, attending trial, consulting with defense counsel (who purported to represent the entire Johnson family), corresponding with the court, and so on.[20] Through this comprehensive participation in the *Gilbert* Action, Johnson and Johnson-Young qualify as parties for res judicata purposes.[21]

---

[19]     Plaintiffs suggest that the 1998 Judgment cannot be res judicata because it was "a personam / consent decree, and not a final judgment on the merits." (doc. 125, at 17.) This contention is legally meritless. *See, e.g., Sanders v. First Bank of Grove Hill*, 564 So.2d 869, 872 (Ala. 1990) ("a consent judgment is generally entitled to the same conclusive effect as a judgment on the merits"); *Gilmore v. Jones*, 97 So.3d 764, 767 (Ala.Civ.App. 2012) (same); *A.B.C. Truck Lines v. Kenemer*, 25 So.2d 511, 516 (Ala. 1946) ("a judgment or decree by consent is as conclusive between [the parties] and their privies as if the suit had been an adversary one and rendered after a trial on the facts").

[20]     As one of numerous examples of such active participation, Reginald Johnson filed "Answers" in the *Gilbert* Action in 1997, both on behalf of his mother and on behalf of himself as "respondent." (Docs. 104, Exhs. 6 & 7.) Johnson-Young testified that "clearly we were a party in the original lawsuit." (Johnson-Young Dep., at 57.)

[21]     Had Johnson and Johnson-Young wished to formalize their involvement in the *Gilbert* Action as interested parties in the quiet title action, they could have done so via motion to intervene pursuant to Rule 24 of the Alabama Rules of Civil Procedure. For whatever reason, they did not file such a motion. (Doc. 125, Exh. Q, at 97-98.)

-14-

Second, even if they were not technically parties to the *Gilbert* Action, Johnson and Johnson-Young are nonetheless bound by the 1998 Judgment for res judicata purposes because they were in privity with Rosemary Johnson by virtue of both their close family relationship with her (*i.e.*, mother/son, mother/daughter) and their intertwined, identically situated interest in the subject Parcel B. *See, e.g., Parmeter v. Amcord, Inc.*, 699 So.2d 1238, 1241 (Ala. 1997) ("substantial identity of the parties" element is satisfied if party against whom res judicata is asserted "either was a party or was in privity with a party to the prior action or … the nonparty's interests were adequately represented by a party in the prior action"); *Owen v. Miller*, 414 So.2d 889, 891 (Ala. 1981) ("A non-party who has an interest sufficiently close to the matter litigated and who had an adequate opportunity to litigate the issue in the prior proceeding, may be bound by the earlier judgment."). In a res judicata analysis, the term "privity denotes mutual or successive relationship to the same right of property." *Mitchell v. Austin*, 94 So.2d 391, 392 (Ala. 1957) (citation and internal quotation marks omitted); *see also Bradberry v. Carrier Corp.*, 86 So.3d 973, 986 (Ala. 2011) ("A party is deemed to be in privity with a party to a prior action when there is an identity of interest in the subject matter of litigation.") (citations and internal quotation marks omitted); *Skelton v. Tyner*, 25 So.2d 160, 161 (Ala. 1946) ("the heir is in privity with his ancestor from whom he inherits the land by operation of law"). Johnson and Johnson-Young were heirs of Rosemary Johnson as to her interest (if any) in Parcel B, and were therefore in privity with her under applicable law.

Third, the interests of Johnson and Johnson-Young were "adequately represented by a party in the prior action," *Parmeter*, 699 So.2d at 1241, so as to satisfy the "substantial identity of the parties" element of the res judicata inquiry. The interests of Reginald Young and Shirley Johnson-Young were fully aligned with those of their mother, Rosemary Johnson, in the *Gilbert* Action; therefore, the "substantial identity of the parties" prong is satisfied.[22]

---

[22]    Plaintiffs challenge this last point by insisting that Rosemary Johnson was "of unsound mind," "mentally ill" and "suffering from Alzheimer's disease" during the *Gilbert* Action. (Doc. 125, at 21-22; doc. 97, at 4.) But Judge McDermott specifically considered and rejected that argument in the context of the *Gilbert* Action. During those proceedings, the lawyer retained by Johnson and Johnson-Young objected that Rosemary Johnson "is not cognizant of everything that's going on around her," but admitted that no court had declared her to be incompetent and that he had no medical evidence that she was unable to handle her own financial affairs. (Doc. 125, Exh. Q, at 91-92.) Judge McDermott observed on the record that
(Continued)

Finally, with respect to the "same causes of action" element of res judicata, Alabama law looks to whether "the claims in the two cases arise out of the same nucleus of operative facts" and whether the parties in the subsequent action "rely on the same evidence and advance many of the same arguments" asserted in the former litigation. *Greene v. Jefferson County Com'n*, 13 So.3d 901, 913 (Ala. 2008); *see also Chapman Nursing Home, Inc. v. McDonald*, 985 So.2d 914, 921 (Ala. 2007) ("the principal test for comparing causes of action … is whether the primary right and duty or wrong are the same in each action") (citations and internal marks omitted). As discussed *supra*, all of plaintiffs' claims asserted in this action rest on the premise that Johnson and Johnson-Young (as heirs of Rosemary Johnson) own a lawful property interest in Parcel B that somehow forbade MKH/Harless from building a fence across Parcel B and afforded them license to travel onto Parcel B and damage that fence with chainsaws and sledgehammers. Plaintiffs rely on the same evidence and arguments here that they used in the *Gilbert* Action. Clearly, then, the claims presented in this action arise from the same nucleus of operative facts as the *Gilbert* Action and involve the same evidence and arguments; therefore, this element of res judicata is satisfied as well.

### B.  Plaintiffs' Counterarguments Against Res Judicata are Meritless.

Notwithstanding the foregoing, Johnson and Johnson-Young insist that res judicata has no application here because (i) there is a fraud exception to the *Rooker-Feldman* doctrine; (ii) they are traveling under Rule 60(b)(2) of the Federal Rules of Civil Procedure; and (iii) they invoke a "fraud exception" to res judicata. Each of these counterarguments will be considered in turn.

---

when Rosemary Johnson testified at trial, he "didn't see any evidence of being – suffering from Alzheimer's. She knew exactly the answers to the questions she was asked." (*Id.* at 94.) Counsel reiterated that "we have no medical evidence to certify that Mrs. Johnson suffers from any mental deficiency." (*Id.* at 95.) The time for Johnson and Johnson-Young to establish that Rosemary Johnson was not competent was back in 1998, when the *Gilbert* Action was pending in state court, they were represented by counsel, and they had a full and fair opportunity to develop and present evidence concerning their mother's competence. Their election to remain silent then does not confer upon them license to attack the 1998 Judgment in the *Gilbert* Action now, or to seek to have this Court make some posthumous determination of the mental capacity of Rosemary Johnson at a court proceeding that occurred a decade and a half ago, based on temporal extrapolation and supposition from medical records that postdate that court proceeding by a substantial margin.

First, plaintiffs quote extensively from a law review article concerning "The Fraud Exception to the *Rooker-Feldman* doctrine." (Doc. 125, at 23-27; doc. 132, at 13-14.) Such reasoning is misplaced because this Court's preclusion ruling is not based on *Rooker-Feldman*.[23] It is legally incorrect to equate res judicata with *Rooker-Feldman*; indeed, the Supreme Court has made clear that "*Rooker-Feldman* is not simply preclusion by another name." *Lance v. Dennis*, 546 U.S. 459, 466, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006); *see also Exxon Mobil Corp. v. Saudi Basic Industries Corp*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) ("*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions."); *In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 235 (8th Cir. 2013) (distinguishing between *Rooker-Feldman* and res judicata and explaining that it is permissible to bypass the former to dispose of a case using the latter); *In re Haven Eldercare, LLC*, 2012 WL 5519572, *1 (2nd Cir. Nov. 15, 2012) ("we conclude that TC Healthcare's enforcement motion is barred by res judicata, making it unnecessary to discuss the applicability of the *Rooker-Feldman* doctrine to the facts of this case"); *In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012) ("attempts merely to relitigate an issue determined in a state case are properly analyzed under issue or claim preclusion principles rather than *Rooker-Feldman*"). This Court is dismissing plaintiffs' claims not pursuant to *Rooker-Feldman*, but pursuant to res judicata; therefore, whether an exception to the *Rooker-Feldman* doctrine might render it inapplicable to this action is inconsequential. In moving for summary judgment, defendants have not invoked *Rooker-Feldman* and this Court has not applied it.

Second, plaintiffs state (without explaining) that Rule 60(b) of the Federal Rules of Civil Procedure defeats application of the res judicata bar. (Doc. 125, at 27-28; doc. 132, at 14-15.) In the overwhelming majority of cases, Rule 60(b) motions for relief from a judgment or order are

---

[23] The judicially created *Rooker-Feldman* doctrine "makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). *Rooker-Feldman* generally applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

filed in the same lawsuit as the judgment or order from which relief is sought.  Nonetheless, the rule does recognize the power of a federal district court to "entertain an independent action to relieve a party from a judgment, order, or proceeding."  Rule 60(d)(1), Fed.R.Civ.P.  It is apparently this power that Johnson and Johnson-Young would invoke.  Plaintiffs' argument is meritless because courts (including binding authority) routinely conclude that the "independent action" provision of Rule 60 is not properly used to circumvent the preclusive effects of res judicata.  *See, e.g., Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985) (in Rule 60(b) context, "the plaintiff cannot use an independent action as a vehicle for the relitigation of issues" because "a party is precluded by res judicata from relitigation in the independent action issues that were open to litigation in the former action where he had a fair opportunity to make his claim or defense in that action") (citation omitted).[24]  Of course, that is precisely what Johnson and Johnson-Young are doing here.  They do not like the answers they received in the 1998 Judgment, the 1999 Lawsuit, the 2001 Lawsuit, the 2004 Lawsuit, or the 2005 Lawsuit, so they commenced this action as a vehicle to relitigate the issue for the sixth time.  Rule 60(b) does not permit them to do so.

Third, Johnson and Johnson-Young assert that res judicata does not apply here because of a purported "fraud exception."  (Doc. 125, at 28-30; doc. 132, at 15.)  According to plaintiffs, the "fraud" was that Harless, Gilbert Leasing and others "had ample opportunity and were in a near perfect venue to manipulate and orchestrate the fraud – transfer the disputed property in a

---

[24]     *See also Gonzalez v. Secretary for Dep't of Corrections*, 366 F.3d 1253, 1295 (11th Cir. 2004) (Tjoflat, J., concurring) ("What Rule 60(b) and these independent actions *do not* provide is a means for litigants to obtain the district court's reconsideration of the claims and defenses its judgment adjudicated."); *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 79 (5th Cir. 1970) ("The independent action can not be made a vehicle for the relitigation of issues."); *Study v. United States*, 2010 WL 1881947, *4 (S.D. Ind. May 7, 2010) ("it is not the function of an independent action to relitigate issues finally determined in another action between the same parties or to ask the court to change its mind"); *Phonometrics, Inc. v. Northern Telecom, Inc.*, 1996 WL 33420461, *5 (S.D. Fla. Apr. 19, 1996) ("Courts have consistently held that a party is precluded by res judicata from relitigation in the independent equitable action issues that were open to litigation in the former action where he had a fair opportunity to make his claim or defense in that action."); *Weldon v. United States*, 845 F. Supp. 72, 80-81 (N.D.N.Y. 1994) ("[I]t is well settled that a party seeking relief in an independent action for fraud under Rule 60(b) must establish that [there was] 'no opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action' … Such an action can not stand if it is merely an attempt to relitigate the case.").

manner that would appear valid to the unsuspected." (Doc. 125, at 23.) So plaintiffs' position is that because Gilbert Leasing's evidence of title to Parcel B was, in plaintiffs' view, "manipulated" and invalid, the doctrine of res judicata is inapplicable. But courts have expressed hostility to the "proposition that fraud on the court is an authority to allow a *collateral* attack on a judgment – *i.e.*, defeating the defense of res judicata." *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000). More importantly, the Alabama Supreme Court and federal courts have refused to entertain "fraud on the court" theories to circumvent res judicata where the party raising them could have litigated them in the original action. *See, e.g., Cashion v. Torbert*, 881 So.2d 408, 414 (Ala. 2003) (res judicata bars "fraud on the court" argument because it could have been raised in the original action); *Weldon v. United States*, 70 F.3d 1, 5 (2nd Cir. 1995) ("Only if Weldon had had no opportunity to litigate the allegations of fraud on the court could this action go forward," without regard to res judicata principles); *Browning v. Navarro*, 887 F.2d 553, 558-60 (5th Cir. 1989) (complaint that underlying judgment was fraudulently obtained was barred by res judicata because the fraud argument could have been presented in the original suit); *Caliendo v. Rodriguez*, 1995 WL 709251, *3 (7th Cir. Nov. 30, 1995) ("Once jurisdiction is established, fraud on the court will not vitiate the preclusive effect of the court's judgment unless the rendering court sets it aside."). All evidence before the Court is that Johnson and Johnson-Young (and/or their privy, Rosemary Johnson) actually did present fraud arguments in the *Gilbert* Action with respect to Gilbert Leasing's claim of title to Parcel B; therefore, invoking fraud now does not facilitate plaintiffs' attempts to dodge the preclusive bar of res judicata.<sup>25</sup>

---

<sup>25</sup>      In an answer filed by Reginald Johnson on behalf of Rosemary Johnson in the *Gilbert* Action on December 15, 1997, he asserted as the only defense that Gilbert Leasing's claims were the product of "fraudulent intent." (Doc. 104, Exh. 6.) The next day, Reginald Johnson filed another pleading accusing the plaintiffs of having "transfer [*sic*] and assessed an instrument with fraudulent intent," with "fabrication" of a "forged instrument" and with presenting a "false instrument for recording." (Doc. 104, Exh. 7.) On March 10, 1998, Reginald Johnson filed yet another pleading in the *Gilbert* Action announcing that "[t]o date the Plaintiff Gilbert Leasing Company, Inc. **have not denied fraud and fraudulent intent.**" (Doc. 104, Exh. 8 (emphasis in original).) On September 14, 2000, Johnson filed a 10-page motion for relief from judgment in the *Gilbert* Action, alleging fraud by Gilbert Leasing and others in the subject conveyance papers. (Doc. 104, Exh. 11.) On June 28, 2000, Shirley Johnson-Young filed a motion for relief from judgment in the *Gilbert* Action, in which she argued at length that "[t]he origination of Gilbert Leasing Company's ownership to the property … is a fraud upon the court of Alabama." (Doc. 104, Exh. 13.) So not only could Johnson and Johnson-Young have (Continued)

## C.      Res Judicata Bars Plaintiffs' Claims in their Entirety.

Notwithstanding plaintiffs' voluminous briefs, the bottom line is quite simple. Fifteen years ago, a state-court judge in a court of competent jurisdiction entered a judgment quieting title to Parcel B; declaring that Gilbert Leasing Company, Inc. had title to such real property; concluding that Rosemary Johnson had no right, title or interest in Parcel B, and that deeds prepared by Reginald Johnson purporting to convey color of title to her were legally invalid; and granting Rosemary Johnson a personal license for her homeplace encroachment on Parcel B, such license to expire upon her death. Reginald Johnson and Shirley Johnson-Young are Rosemary Johnson's heirs. They are in privity to her, their interests were substantially represented in the *Gilbert* Action, they participated extensively in that litigation, and they made the same fraud arguments in the *Gilbert* Action that they advance today. They were dissatisfied with the judgment entered in the *Gilbert* Action on July 6, 1998. They have spent the last 14 years filing a barrage of lawsuits in federal and state courts in hopes of encountering a judge or jury that will disagree with the state-court judge in the *Gilbert* Action, find that Gilbert Leasing, MKH and Harless defrauded the Johnsons out of their land, and award them title to Parcel B.

But that is not how our judicial system works. Parties do not get to continue filing lawsuits – harassing their adversaries and consuming scarce judicial and litigant resources for years on end – until they get an answer they like. Indeed, the very purpose of the judicially created doctrine of res judicata is to ensure "that there be an end to litigation; that those who have contested an issue shall be bound by the ruling of the court; and that issues once tried shall be considered forever settled between those same parties and their privies." *Hughes v. Martin*, 533 So.2d 188, 190 (Ala. 1988); *see also Ex parte Ocean Reef Developers II, LLC*, 84 So.3d 900, 905 (Ala.Civ.App. 2011) ("One benefit of the doctrine of res judicata is that it prevents a defendant from being subject to repeated litigation over the same subject matter."). This case presents a textbook example of the sound policy justifications undergirding the doctrine. Plaintiffs have tried and failed in at least five different lawsuits to claim property rights in Parcel B. The vexation and expense that Johnson and Johnson-Young have caused to other parties

---

presented their "fraud on the court" arguments in the *Gilbert* Action, but they actually did so. Accordingly, black-letter law precludes plaintiffs from utilizing a "fraud on the court" theory to relitigate ownership of Parcel B at this time.

(chiefly MKH and Harless, but also the City), and the colossal waste of judicial resources flowing from their efforts to get some judge – any judge – to deviate from Judge McDermott's judgment in the *Gilbert* Action are precisely why they cannot and must not be allowed to persist in such litigation here. Res judicata forbids it.

For these reasons, and because plaintiffs' claims in this lawsuit all rest on the legally unsound premise that they own Parcel B, the Court finds that defendants' Motions for Summary Judgment are due to be granted and that plaintiffs' claims are barred by the doctrine of res judicata.

## V.    Alternative Analysis of Merits of Plaintiffs' Claims.

Even if the doctrine of res judicata were not fatal to each of the six federal causes of action interposed in the Amended Complaint, summary judgment would remain appropriate for all defendants on other grounds.

Count I is framed as a claim for "False arrest and false imprisonment against individual Defendant, Officer Randall Champions in his official capacity." (Doc. 17, ¶ 51.) Count I does not purport to have been brought against any other defendant. Plaintiffs voluntarily dismissed Officer Champion as a defendant in October 2013; therefore, it appears that Count I is no longer part of this lawsuit.[26]

---

[26]    Even if Count I could be construed as stating a claim against the City of Satsuma (or any other defendant), summary judgment would remain appropriate. Plaintiffs purport to have brought this § 1983 false arrest/false imprisonment claim under the Fourth and Fourteenth Amendments. "The existence of probable cause at the time of arrest … constitutes an absolute bar to a section 1983 action for false arrest." *Myers v. Bowman*, 713 F.3d 1319, 1326 (11th Cir. 2013) (citation omitted). Moreover, both the torts of false arrest and false imprisonment require an unlawful detention "without legal process." *Wallace v. Kato*, 549 U.S. 384, 389, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *see also Sevostiyanova v. Cobb County of Ga.*, 2012 WL 2814394, *3 (11th Cir. July 11, 2012) (rejecting false imprisonment claim where officers arrested plaintiff "pursuant to a facially valid warrant issued by a magistrate judge"); *Williamson v. Curran*, 714 F.3d 432, 444 (7th Cir. 2013) ("Generally, a person arrested pursuant to a facially valid warrant cannot prevail in a § 1983 suit for false arrest …."). The summary judgment record conclusively establishes both that Officer Champion had probable cause to arrest Johnson and Johnson-Young on criminal mischief charges, and that there was legal process (*i.e.*, facially valid arrest warrants) for their detention. No constitutional claim of false arrest or false imprisonment may lie where plaintiffs were arrested and detained pursuant to properly issued arrest warrants by the City of Satsuma Magistrate, based on photographic evidence that MKH's fence had been damaged and eyewitness statements (from plaintiffs' own siblings) that plaintiffs were the culprits.

Counts II through V of the Amended Complaint purport to assert § 1981 and § 1983 claims against the City, MKH and Harless for deprivations of (or conspiracy to deprive) plaintiffs' civil rights, on a theory of violation of equal protection (race discrimination and "class of one"). By all appearances, Counts II through V are grounded in events that took place in and before 2003. In their briefs, plaintiffs assert that they were "singled out due to [their] race and ethnicity" by defendants' actions of (i) closing Hilliard Drive where it approaches the front of the Johnson family home; (ii) blocking off that route by constructing a fence; (iii) moving the mailbox to the rear of the Johnson family home; (iv) failing to respond to Johnson family requests for governmental intervention; (v) creating a route for plaintiffs to access the Johnson family home from the back via Powers Road rather than from the front via Hilliard Drive; and (vi) sending the Johnsons a letter in July 2004 informing them that their "new address is 409 A, B and C Powers Road" (doc. 125, Exh. S). (Doc. 127, at 9-13; doc. 125, at 44-45.)

As defendants correctly point out in their summary judgment filings, the threshold defect with Counts II through V is that they are time-barred. The § 1983 and § 1985 conspiracy claims are subject to a two-year statute of limitations. *See, e.g., McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) ("All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. … [I]n Alabama … the governing limitations period is two years."); *Morrow v. Town of Littleville*, 576 So.2d 210, 213 (Ala. 1991) (concluding that "the only statute of limitations now applicable to a § 1983 claim filed in a court in Alabama, whether that court is a state court or a federal court, is the two-year statute of limitations set out in Ala.Code 1975, § 6-2-38(*l*)"). The Johnsons filed their Complaint on May 21, 2012; therefore, any constitutional claims relating to deprivations predating May 2010 are time-barred. By all appearances (and by their own admission), plaintiffs' § 1983 and § 1985 claims relate to pre-2010 conduct and pre-2010 alleged deprivations, and are therefore untimely. The same conclusion attaches to plaintiffs' § 1981 claims alleging race-based deprivation of full and equal benefit of the laws.[27]

---

[27]     *See, e.g., Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008) (explaining that Alabama's two-year residual statute of limitations applies to § 1981 causes of action that arise prior to December 1, 1990); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (quoting version of § 1981 then in effect as providing that all persons have the same right "to the full and equal benefit of all laws and (Continued)

Absent evidence or argument that the § 1981 claims asserted by Johnson and Johnson-Young were "made possible by a post-1990 enactment," *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008), they remain subject to the two-year limitations period found at Alabama Code § 6-2-38(*l*).[28]

In addition to being time-barred, Counts II through V suffer from a host of other deficiencies that entitle defendants to summary judgment. For example, insofar as plaintiffs pursue a claim under § 1981 against the City of Satsuma, that claim is not cognizable as a matter of law. *See, e.g., Baker*, 531 F.3d at 1337 ("Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983."). Similarly, to the extent plaintiffs' claims under § 1981 and § 1983 proceed on theories of race discrimination, the record is devoid of facts (as contrasted with speculation, innuendo and rhetoric) that might support a reasonable inference that any of the complained-of conduct by defendants amounted to purposeful race discrimination (or a conspiracy to engage in same). *See, e.g., General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,

---

proceedings for the security of persons and property as is enjoyed by white citizens"); *McKitt v. Alabama Alcoholic Beverage Control Bd.*, 2013 WL 5406804, *20 (M.D. Ala. Sept. 25, 2013) ("If a § 1981 claim was made possible through the enactment of the 1991 amendments to § 1981, then those claims are governed by the four-year statute of limitations" found at 28 U.S.C. § 1658).

[28]     Plaintiffs attempt to rebut movants' timeliness arguments via the doctrines of continuing violation and fraudulent concealment. (Doc. 127, at 19-25.) Neither contention is persuasive. Continuing violation doctrine is inapplicable because plaintiffs are complaining not about present violations, but about the present consequences of a past violation. *See Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) ("The critical distinction in the continuing violation analysis … is whether the plaintiff[ ] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does."). And fraudulent concealment has no bearing on plaintiffs' claims because, by their own admission, Johnson and Johnson-Young were aware of defendants' conduct and the alleged constitutional violations about which they complain for many years before commencing the instant lawsuit. Also, even if a four-year limitations period applied to certain of plaintiffs' claims, the record reveals no facts from which a reasonable factfinder might conclude that defendants violated plaintiffs' constitutional rights at any time following May 2008. Certainly, none of the record facts relating to the arrest and prosecution of Johnson and Johnson-Young for criminal mischief (and the ensuing conviction of Johnson-Young) support any reasonable inference of a constitutional deprivation perpetrated by defendants.

458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) ("We conclude … that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."); *Citizens Concerned About Our Children v. School Bd. of Broward County, Fla.*, 193 F.3d 1285, 1294-95 (11th Cir. 1999) ("In this summary judgment context, when the defendant has pointed to the absence of evidence of discriminatory intent, it becomes the plaintiffs' job to produce such evidence.").  Moreover, plaintiffs' § 1983 equal protection claims based on a "class of one" theory cannot survive because they have failed to identify "similarly situated" comparators who were "intentionally treated differently" from them.  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010) ("To be similarly situated, the comparators must be prima facie identical in all relevant respects.") (citations and internal quotation marks and emphasis omitted).  Besides, the vast majority of the conduct underlying plaintiffs' § 1983 claims (*i.e.*, the blockage of Hilliard Drive, the construction of the fence, the alleged fraudulent conveyance of Parcel B) is purely private conduct, not conduct under color of state law, and is therefore beyond the reach of § 1983 as a matter of law.  *See, e.g., Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003) ("the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful") (citation omitted).[29]  For all of these reasons, even if Counts II through V were not time-barred (which they are), defendants would be entitled to judgment as a matter of law.

Finally, Count VI of the Amended Complaint seeks to hold defendants liable under 18 U.S.C. § 1705, based on the relocation of the mailbox at the Johnson family home from the front to the rear of the home.  (Doc. 17, ¶¶ 61-63.)  Plaintiffs acknowledge that the relocation of the mailbox

---

[29]     The Eleventh Circuit has explained that private parties qualify as "state actors" for § 1983 purposes only where "one of the following three conditions is met: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution …; (2) the private parties performed a public function that was traditionally the exclusive prerogative of the state …; or (3) the state had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the exercise." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citation and internal marks omitted).  The record taken in the light most favorable to Johnson and Johnson-Young does not support a reasonable inference that any of these three conditions are present.  Plaintiffs argue that MKH and Harless were "intertwined" with the City and that there was a "symbiotic relationship" between private and state actors (doc 125, at 42); however, the record is devoid of evidence that such was the case.  A plaintiff cannot overcome summary judgment by trading in conclusory labels and unsupported generalities.

happened in the 2003-2004 time frame.  (Johnson-Young Dep., at 105.) Thus, this claim is time-barred for the same reasons that Counts II through V are untimely, as discussed *supra*.  More fundamentally, Count VI fails because § 1705 is a criminal statute.[30]  Absent some expression of Congressional intent to create a private right of action, a plaintiff cannot maintain a civil claim against a defendant for violation of a federal criminal statute.  *See, e.g., Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1303 (11th Cir. 2008) (rejecting notion that Congress authorized "a federal private right of action any time a civil plaintiff invokes a federal criminal statute").[31]  Nothing in the text of § 1705 expressly or impliedly creates a private right of action, and federal courts have consistently refused to recognize civil claims for mail-tampering crimes.  *See, e.g., Brett v. Brett*, 2012 WL 5450879, *2 (3rd Cir. Nov. 8, 2012) (finding no basis for civil liability in plaintiff's claim that defendants opened his mail, in violation of 18 U.S.C. § 1702, because "criminal statutes do not give rise to civil liability"); *McFarlane v. Roberta*, 891 F. Supp.2d 275, 285 (D. Conn. 2012) (rejecting plaintiff's civil claim for violation of criminal statute prohibiting mail tampering because Congress did not intend to create a private, civil cause of action for violations); *Durso v. Summer Brook Preserve Howmeowners Ass'n*, 641 F. Supp.2d 1256, 1268 (M.D. Fla. 2008) (opining that 18 U.S.C. § 1705 "provides for criminal penalties but does not create civil liability," and dismissing plaintiff's civil cause of action predicated on violation of § 1705); *Robinson v. Hubbard*, 2008 WL 1833495, *2 (S.D. Cal. Apr. 23, 2008) ("the federal statutes criminalizing mail tampering do not provide a private civil cause of action").  For all of these reasons, defendants are plainly entitled to summary judgment on Count VI.

---

[30]    In relevant part, § 1705 provides as follows:  "Whoever willfully or maliciously injures, tears down or destroys any letter box or other receptacle intended or used for the receipt or delivery of mail on any mail route … shall be fined under this title or imprisoned not more than three years, or both."  18 U.S.C. § 1705.

[31]    *See also Oglala Sioux Tribe v. Schwarting*, 894 F. Supp.2d 1195, 1200 (D. Neb. 2012) (mere "presence of a criminal statute neither creates nor implies a corresponding private right of action"); *Bullard v. MRA Holding, LLC*, 890 F. Supp.2d 1323, 1329 (N.D. Ga. 2012) ("absent a clear indication from Congress, courts should not infer a civil cause of action from a federal criminal statute"); *Christian v. Town of Riga*, 649 F. Supp.2d 84, 90 (W.D.N.Y. 2009) ("Generally, violations of the Criminal Code may not serve as the basis for a civil cause of action unless the statute includes an express or implied private right of action."); *Florance v. Buchmeyer*, 500 F. Supp.2d 618, 626 (N.D. Tex. 2007) ("a private citizen cannot enforce criminal statutes in a civil action").

Based on the foregoing analysis, the undersigned concludes that there are no genuine issues of material fact, and that defendants are entitled to judgment as a matter of law on all claims and causes of action interposed by Johnson and Johnson-Young. This conclusion is expressly premised on both res judicata and a timeliness/merits analysis as presented above. In light of this determination, all of plaintiffs' claims will be **dismissed with prejudice**.

VI.     **MKH Properties' Requests for Sanctions and Counterclaims.**

    *A.     Potential for Sanctions.*

The dismissal of plaintiffs' claims in their entirety does not resolve all issues and causes of action herein. In particular, defendants Maurice Kirk Harless and MKH Properties included in their Answers (docs. 70, 73) a request for Rule 11 sanctions, reasoning that Johnson and Johnson-Young have presented frivolous claims for improper purposes. (Doc. 70, at 10; doc. 73, at 10.) MKH Properties and Harless further requested that the Court exercise its inherent powers to impose sanctions against Johnson and Johnson-Young for bringing frivolous claims in bad faith. (Doc. 70, at 11; doc. 73, at 10-11.) In both instances, MKH Properties/Harless explained that the sanctions they seek consist of both an award of attorney's fees and an injunction to restrict future filings by Johnson and Johnson-Young. With respect to these requests for sanctions, the parties are instructed that after all claims and counterclaims have been resolved, the Court will enter a briefing schedule affording MKH Properties and Harless an opportunity to file a formal motion for sanctions, accompanied by supporting exhibits and legal authority as appropriate. Johnson and Johnson-Young will receive a fair opportunity to be heard in response before the Court takes the sanctions issue under submission.

Notwithstanding the above, the Court observes that plaintiffs face a high risk of being subjected to sanctions. Through their conduct and their actions over the last decade and a half, Mr. Johnson and Ms. Johnson-Young have demonstrated a shocking lack of respect for the rule of law. A veritable cavalcade of federal and state court jurists has explained to them, both in written orders and in open court, that no matter how much they disagree or dislike it, they are bound by the 1998 Judgment in the *Gilbert* Action and that the law does not allow them to relitigate ownership issues concerning Parcel B.[32] In 2007, a federal jury unanimously found

---

[32]    Perhaps the clearest explanation occurred on January 26, 2009, when Reginald Johnson appeared before Judge DuBose in this District Court for a show cause hearing as to why (Continued)

Johnson in the wrong, awarding MKH Properties a judgment of $86,500 in compensatory and punitive damages against Johnson for slander of title to Parcel B. Yet plaintiffs have ignored the clear-eyed explanations and cautionary admonitions of these learned judges. They have disregarded the jury verdict. And they have persisted in a reckless, self-destructive, neverending charade in which they sue MKH, Harless and the City of Satsuma over and over again. In addition to being futile and lacking colorable legal or factual basis, Johnson and Johnson-Young's conduct has forced these defendants to bear enormous legal expenses and has imposed untold burdens on federal and state courts managing heavy dockets with scarce resources, all because plaintiffs do not like the adverse rulings in every single lawsuit they have filed. Such an abusive course of conduct is a textbook example of sanctionable activity under both Rule 11 of the Federal Rules of Civil Procedure and the inherent powers of this Court.

What's more, Johnson and Johnson-Young have recently testified in no uncertain terms that they intend to continue filing lawsuits indefinitely against MKH and/or Harless concerning Parcel B until they get what they want. In a deposition held on September 16, 2013, Johnson answered affirmatively when asked each of the following: (i) "If the Judge dismisses this case without a jury trial, will you file another case?" (ii) "If a jury decides against you, will you file another case?" and (iii) "If that case goes against you, will you file another case?" (Johnson Dep. (doc. 104, Exh. 25), at 46-47.) When asked the same questions in her deposition, Johnson-

_____

he should not be held in contempt for violating her injunction in the 2005 Lawsuit. During that hearing, Johnson's lawyer and MKH's lawyer announced that the parties had reached an agreement under which Johnson would execute a Quitclaim Deed as to Parcel B and MKH would cease collection efforts under the outstanding monetary judgment against Johnson. At that time, Judge DuBose addressed Reginald Johnson directly. She explained, "I have ruled that you did not have the constitutional rights. That you should have … appealed your State Court case. That you didn't have the right to assert them here." She reminded him, "You said you wanted a jury. I gave you a jury trial. The fairest jury trial I could possibly give you. And now it's over." Judge DuBose also informed him that if he continued to disregard her rulings, "the tool I am down to is having to incarcerate you until you abide by the Court's orders. … I don't want to have [to] use that power against you. ***So please listen to your lawyer. Please let this be the end of it.***" (Doc. 105, Exh. 25 at 31 (emphasis added).) Johnson responded, "I am in agreement and I want to apologize." His subsequent conduct in apparently breaching his promise, disavowing the Quitclaim Deed bearing his signature, and filing yet another Parcel B lawsuit, however, belies any notion that his apology was sincere, that he ever intended to heed Judge DuBose's orders, or that he will ever be willing to "let this be the end of it."

Young testified that she would file another case "[i]f there is another avenue," elaborating that "I will find whatever technicality in the law that I can find, you know," and stating, "why would I continue to accept the fact that I have to come to the back of my house." (Johnson-Young Dep. (doc. 104, Exh. 5), at 110, 114.) Through such testimony, plaintiffs have made powerful admissions that they are proceeding in bad faith and they intend to file harassing, baseless lawsuits against these defendants until the end of time, no matter what any judge or jury says. The Court will not hesitate to impose substantial sanctions, if necessary, to discourage Johnson and Johnson-Young from doing that which they have said they will do, namely, continuing on the path of frivolous litigation that they have walked for the last 14 years, with the effect of harassing Harless and MKH Properties and squandering scarce judicial resources to address baseless claims brought by unreasonable plaintiffs who refuse to submit to the rule of law.

### B.    MKH's Counterclaims.

Not to be overlooked in the parties' sprawling mass of arguments and briefs is MKH Properties' Motion for Partial Summary Judgment (doc. 105) on its Counterclaims. Recall that MKH Properties has asserted a state-law counterclaim against Reginald Johnson for breach of contract (based on his 2009 agreement to refrain from making any further claim to Parcel B in exchange for MKH Properties not executing on its $86,500 judgment against him in the 2005 Lawsuit); as well as state-law counterclaims against both Reginald Johnson and Shirley Johnson-Young for trespass (entry onto Parcel B in November 2009 to destroy the perimeter fence), conversion (destruction of the fence), trespass (entry onto Parcel B in September 2012 to cut a track or road from Parcel A across two subdivision lots in Parcel B), and civil conspiracy. (*See* doc. 70.) MKH Properties claims damages in excess of $75,000 for these claims, on the theory that the alleged conduct of Johnson and Johnson-Young has "rendered unmarketable" at least two adjacent subdivision lots in the Gilbert Creek Estates development that otherwise would have had a fair market value in excess of $75,000. These are serious claims as to which Johnson and Johnson-Young face direct financial exposure, if found liable to MKH Properties at trial.

In its Rule 56 Motion, MKH Properties does not seek entry of judgment as a matter of law on any of these Counterclaims. Rather, MKH Properties simply requests summary judgment on the issue of whether the 1998 Judgment entered in the *Gilbert* Action "conclusively established that Reginald Johnson and Shirley Johnson-Young have no right, title or interest in the real property which was the subject of the judgment." (Doc. 105.) For all of the reasons set

forth above, the Court finds as a matter of law that the 1998 Judgment did, in fact, conclusively establish that Johnson and Johnson-Young have no right, title or interest in Parcel B. Johnson and Johnson-Young are not entitled to revisit and relitigate this question here, just as they have not been entitled to do so in the four other lawsuits they have filed in state and federal court in the intervening 15 years. They have been conclusively, repeatedly adjudicated to have no right, title or interest in Parcel B; therefore, Johnson and Johnson-Young will not be permitted to argue otherwise in defense of the pending Counterclaims. MKH Properties' Motion for Partial Summary Judgment is **granted** as to the issue of ownership of Parcel B.

Of course, this ruling does not establish liability of Johnson and Johnson-Young on MKH Properties' Counterclaims. Those Counterclaims remain active and pending, and will be set for trial as to all issues other than the ownership of Parcel B (which is off the table via the res judicata effect of the 1998 Judgment). This trial will entail considerable expense and inconvenience for the parties, with the potential for a substantial monetary judgment against Johnson and Johnson-Young if the jury finds them liable. And plaintiffs' claims against MKH Properties, Maurice Kirk Harless and City of Satsuma have all been dismissed with prejudice; therefore, the jury will not hear about those causes of action and plaintiffs will not be permitted to argue those claims to the jury. The only questions presented to the jury at trial will be whether Johnson and Johnson-Young are liable on the Counterclaims and, if so, what damages to award MKH Properties. And regardless of the outcome of the Counterclaims, the request for sanctions by MKH Properties and Harless remains in play and will be taken up by this Court via appropriate motion by MKH Properties and Harless after all other issues have been adjudicated. If such a motion is granted, Johnson and Johnson-Young could be subject to substantial monetary sanctions as well as court-imposed restrictions on future filings to put a halt to their demonstrated pattern of abusing the judicial process to relitigate claims that have been decided against them time and time again.[33]

---

[33] From MKH Properties' standpoint, such proceedings would not be unambiguously favorable, either. Indeed, MKH Properties would confront the certainty of accruing significant legal expenses to litigate its Counterclaims through trial as well as its sanctions requests, coupled with the inherent unpredictability of a jury trial and the expense and uncertainty of recovering on any monetary judgment that might be awarded.

Before embarking on this time-consuming and expensive course, the undersigned **orders** the parties to meet in-person for a status conference before the Magistrate Judge. The parties will be contacted by the Magistrate Judge to schedule that conference and identify the materials (if any) they will be required to submit in advance of the status conference. This action will not proceed to Final Pretrial Conference, jury selection or trial until such time as this status conference (and any follow-up proceedings that the Magistrate Judge may direct) has been completed; therefore, the previously scheduled pretrial conference setting of January 23, 2014 at 10:00 a.m. and the jury selection setting of February 4, 2014 are **continued** until further notice.

VII.    **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.      Defendant City of Satsuma's Motion for Summary Judgment (doc. 99) is **granted**, and all claims and causes of action asserted against that defendant herein are **dismissed with prejudice**;

2.      The Clerk of Court is directed to **terminate** City of Satsuma as a party defendant in this matter;

3.      Defendants MKH Properties and Maurice K. Harless's Motion for Summary Judgment (doc. 104) is **granted**, and all claims and causes of action asserted against those defendants are **dismissed with prejudice**;

4.      Plaintiffs' "Leave for a Motion to Determine who among the Parties of this Litigation has the Superior Title to the Property" (doc. 97) is **denied**;

5.      MKH Properties and Maurice K. Harless's Motion for Partial Summary Judgment (doc. 105) is **granted**, and the Court finds that the issue of plaintiffs' ownership interest in Parcel B was conclusively decided in the *Gilbert* Action and the subsequent four lawsuits. That issue cannot and will not be relitigated herein. MKH and Harless will not be required to make any further showing of proof that plaintiffs have no ownership interest in Parcel B in connection with the Counterclaims and request for sanctions. Likewise, Johnson and Johnson-Young will not be permitted to offer evidence or argument to the jury of their purported interest in Parcel B. That issue has been definitively, conclusively and repeatedly decided against them in prior litigation, and they are legally bound by these determinations;

6.     The parties are **ordered** to attend and participate in good faith an in-person status conference to be scheduled by the Magistrate Judge; and

7.     The Final Pretrial Conference, jury selection and trial settings are **continued** until further notice.

DONE and ORDERED this 2nd day of January, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE