IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| REGINALD JOHNSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 12-0334-WS-M |
| | ) |
| RANDALL CHAMPIONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court for final adjudication of all remaining issues relating to defendants' Motions for Sanctions (docs. 149 & 150).

On March 13, 2014, the undersigned entered an Order (doc. 156) granting the Motions for Sanctions filed by defendants M.K. Harless and MKH Properties, LLC (the "Harless Defendants"), pursuant to both Rule 11, Fed.R.Civ.P., and the Court's inherent powers.[1] The March 13 Order directed the Harless Defendants to supplement their Motions with specifics concerning the desired prospective filing restrictions on plaintiffs as well as the requested monetary sanctions. The Harless Defendants timely complied via Response (doc. 157) dated March 28, 2014, wherein they enumerated the specific injunctive relief requested and documented the $72,477.61 in attorney's fees and costs for which they sought reimbursement.

For their part, plaintiffs, Reginald Johnson and Shirley Johnson-Young, by and through counsel of record, indicated that they "do not object to a pre-clearance of future actions filed by them against Defendants" and that they "do not dispute the reasonableness of the attorney fees

---

[1] The seven-page March 13 Order set forth in substantial detail the reasons why the Motions were being granted, what conduct of plaintiffs was being sanctioned, and the legal basis for the sanction. As such, the March 13 Order complied with the requirement of Rule 11(c)(6), Fed.R.Civ.P., that "[a]n order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." *Id.*; *see also Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 (11th Cir. 2002) ("When imposing sanctions, the district court must describe the conduct determined to constitute a violation of the rule and explain the basis for the sanction imposed.").

and legal fees asserted by Defendants' counsel." (Doc. 158, at 1.)  Indeed, plaintiffs' sole asserted objection to the Harless Defendants' proposed sanctions was a conclusory statement that paying the Harless Defendants' legal fees "will be financially devastating, leaving Plaintiffs destitute." (*Id.*)  By Order entered on April 18, 2014, the Court directed plaintiffs to make an evidentiary submission to corroborate that allegation of financial hardship.  In particular, the April 18 Order provided as follows: "Johnson and Johnson-Young are **ordered**, on or before **May 2, 2014**, to submit a detailed written evidentiary submission substantiating their contention that any monetary sanction would be 'financially devastating'" to them. (Doc. 160, at 1-2.)  The April 18 Order further provided that if "plaintiffs wish to be heard any further on the specific non-monetary sanctions proposed" by the Harless Defendants, "their written submission must address that issue in detail as well." (*Id.* at 2.)  Plaintiffs were cautioned that if they did not respond, the Court would take the sanctions issue under submission after May 2, 2014.  That is precisely what happened.  Plaintiffs elected not to respond to the April 18 Order, and their deadline for doing so has long since expired; therefore, the Court finds that plaintiffs have waived the opportunity to be heard further on the sanctions issue, to make any showing of inability to pay, or to propose modifications to the requested pre-filing restrictions.

All that remains, then, is to fix the precise terms of monetary and non-monetary sanctions to be imposed against Johnson and Johnson-Young.  With regard to the former, as noted, plaintiffs expressly disclaimed any objection to the reasonableness of the attorney's fees and costs claimed by the Harless Defendants; therefore, the Court need not independently evaluate the reasonableness of those accrued fees and costs on a line-by-line basis.  Instead, the Court accepts as reasonable movants' lodestar calculations of $71,602 in attorney's fees, plus $875.61 in costs.  That said, a party in whose favor Rule 11 sanctions is awarded is not automatically entitled thereby to the full measure of reasonable fees and costs incurred.  To the contrary, Rule 11 sanctions must be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include … an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Rule 11(c)(4), Fed.R.Civ.P.; *see also Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295-96 (11th Cir. 2002) (affirming monetary sanction that represented "only about one-third of the amount of attorney's fees" incurred by movant because of non-movant's violative conduct).  "In determining the amount of sanctions to impose, a district court may take

into account compensation of other parties and punishment of the offender, but deterrence remains the touchstone of the Rule 11 inquiry." *Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir. 1998) (observing that "conduct and resources of the party to be sanctioned are relevant to the determination of the amount of sanctions," as is "the extent to which the nonviolating party's expenses could have been avoided, or mitigated").

After careful consideration, the Court imposes a monetary sanction against Johnson and Johnson-Young, jointly and severally, in the amount of **$72,477.61**, to offset the attorney's fees and costs incurred by the Harless Defendants in defense of this frivolous action. The Court concludes that this monetary sanction is sufficient to deter repetition of plaintiffs' conduct for the following reasons: (i) plaintiffs have brought the same or substantially similar claims to those asserted against the Harless Defendants here in at least four previous lawsuits; (ii) judgment was entered against plaintiffs in each of those prior actions; (iii) plaintiffs lacked any colorable factual or legal basis for seeking to overturn or relitigate those adverse judgments, yet they sued the Harless Defendants again anyway, renewing claims that lacked any reasonable chance of success in bad faith and for the improper purpose of harassing the Harless Defendants; (iv) plaintiffs' sworn testimony in this case strongly suggests that they intend to continue filing lawsuits against the Harless Defendants indefinitely concerning the subject real property, no matter how emphatically or how often a judge or trier of fact might find against them; (v) the Harless Defendants have incurred more than $72,000 in attorney's fees and costs to defend against plaintiffs' frivolous claims herein; (vi) the Court finds that awarding the full measure of the Harless Defendants' attorney's fees and costs (in tandem with the other sanctions being implemented) is necessary to achieve the deterrent objective that is the touchstone of Rule 11 relief; and (vii) the Court is convinced that this monetary sanction, coupled with the stringent non-monetary sanctions detailed *infra*, will have the requisite "bite" and will suffice to deter repetition of plaintiffs' bad-faith, harassing conduct.

As noted, the sanctions requested by the Harless Defendants also include a non-monetary component, in the form of an injunction barring Johnson and Johnson-Young from filing any action against the Harless Defendants regarding "Parcel B" without prior leave of this Court. (*See* doc. 157, at 2-3.) Plaintiffs stated that they do not object to this sanction. Given plaintiffs' extensive track record of filing one lawsuit after another (as well as affidavits and deeds purporting to encumber Parcel B in probate court) contesting the Harless Defendants' ownership

of Parcel B (which has since been developed into a residential subdivision known as Gilbert Creek Estates), despite numerous adverse judgments and previous judicial sanctions, the Court agrees with movants that restricting plaintiffs' future filings is imperative in this case to achieve Rule 11(c)(4)'s objective of deterrence.

Federal district courts are empowered to enter an injunction of the kind requested by the Harless Defendants pursuant to the All Writs Act, 28 U.S.C. § 1651, which authorizes federal district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). The Eleventh Circuit has explained that "[t]he court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bent on re-litigating claims that were (or could have been) previously litigated before the court from filing in both judicial and non-judicial forums, as long as the injunction does not completely foreclose a litigant from any access to the courts …." *Riccard*, 307 F.3d at 1295 n.15; *see also Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008) ("the district courts are authorized by the All Writs Act, 28 U.S.C. § 1651(a), to restrict access to vexatious and abusive litigants"); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007) ("The All Writs Act … provides district courts with the inherent power to enter pre-filing orders against vexatious litigants.").[2]

The Court does not impose such pre-filing restrictions lightly. After all, the Harless Defendants are requesting an extraordinary sanction. As documented extensively in previously entered Orders, however, extraordinary circumstances are present here. Johnson and Johnson-Young have demonstrated a persistent unwillingness to accept or abide by previous judgments entered against them in federal court, but have instead sued the Harless Defendants over and over

---

[2] The statutory authority of federal district courts to issue writs in aid of their jurisdiction has been held to extend to injunctions barring a vexatious party from relitigating claims in state court following entry of a judgment in federal court, as is the case here. *See, e.g., Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) ("it is widely accepted that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions without permission from the court"); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328, 335 (2nd Cir. 1985) (All Writs Act "permits a district court to enjoin actions in state court where necessary to prevent relitigation of an existing federal judgment, … notwithstanding the fact that the parties to the original action could invoke res judicata in state courts against any subsequent suit brought on the same matters."); *Annunziato v. eMachines, Inc.*, 2006 WL 5014567, *3 (C.D. Cal. July 24, 2006) ("the All Writs Act permits a district court to enjoin a state court where necessary to prevent relitigation of an existing federal judgment").

again to express their dissatisfaction with the Harless Defendants' ownership and handling of Parcel B / Gilbert Creek Estates. Such serial lawsuits are inconvenient, harassing and expensive for the Harless Defendants. They also needlessly strain finite judicial resources and divert them away from good-faith litigants and meritorious cases, thereby delaying adjudication or other resolution of those matters so that Johnson's and Johnson-Young's frivolous claims may be processed.[3] Plaintiffs' pattern of abusive filings, unchecked litigiousness, and reckless disregard of court rulings has continued, unabated and unapologetically, for nearly 15 years. Ominously, plaintiffs have given every indication in recent sworn testimony that they intend to keep suing M.K. Harless and/or MKH Properties, LLC, until they are satisfied, no matter how many adverse judgments they may rack up in the interim. Under the circumstances, the Court is persuaded that decisive action is needed to deter plaintiffs' bad-faith conduct, to curtail their wasteful filings, and to safeguard the proper, efficient functioning of the judicial system.[4]

For all of the foregoing reasons, it is **ordered** that the following sanctions are imposed against Reginald Johnson and Shirley Johnson-Young, jointly and severally, pursuant to Rule 11 of the Federal Rules of Civil Procedure, the inherent powers of this Court, the All Writs Act, and

---

[3] The harm to the judicial system caused by such misconduct is substantial. *See, e.g., Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008) ("Frivolous and vexatious law suits threaten the availability of a well-functioning judiciary to all litigants."); *Procup v. Strickland*, 792 F.2d 1069, 1072 (11th Cir. 1986) (*en banc*) ("Every lawsuit filed, no matter how frivolous or repetitious, requires the investment of court time, whether the complaint is reviewed initially by a law clerk, a staff attorney, a magistrate, or the judge."). For that reason, federal district courts fully "expect litigants to treat their litigation with utmost seriousness, without abusing legal process and without unduly testing of the resolve or common sense of the judiciary." *In re Telfair*, 745 F. Supp.2d 536, 580 (D.N.J. 2010) (footnote omitted). Plaintiffs have fallen well short of this minimum standard of conduct for federal litigants.

[4] *See Miller*, 541 F.3d at 1096 ("Conditions and restrictions on each person's access are necessary to preserve the judicial resource for all other persons."); *Procup*, 792 F.2d at 1073-74 (recognizing that courts bear "responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others"); *Jones v. Warden v. Stateville Correctional Center*, 918 F. Supp. 1142, 1153 (N.D. Ill. 1995) ("A recreational litigant is one who engages in litigation as sport and files numerous complaints with little regard for substantive law or court rules. When confronted with the recreational plaintiff, courts, to protect themselves and other litigants, have enjoined the filing of further case[s] without leave of court."); *Bethel v. Bosch*, 2010 WL 5014752, *4 (S.D. Ala. Dec. 2, 2010) ("When *pro se* litigants abuse their right of access to the courts, … federal courts have the power, and indeed the obligation, to impose restrictions to curtail such wasteful and destructive conduct.").

this Court's Orders (docs. 136, 156 and 160) entered on January 2, 2014, March 14, 2014, and April 18, 2014:[5]

1. Plaintiffs are **ordered** to pay M.K. Harless and MKH Properties, LLC, the total sum of **$72,477.61** to offset the attorney's costs and fees incurred by those defendants as a direct result of plaintiffs' violation of Rule 11, with such funds payable directly to M.K. Harless and MKH Properties, LLC;

2. Plaintiffs are **enjoined** from filing any Action (as that term is defined in Paragraph 3, *infra*) against M.K. Harless, including his heirs, successors, or assigns, or MKH Properties, LLC, including its owners, agents, representatives, employees, officers, attorneys, predecessors, successors or assigns, or purchasers of subdivision lots within Gilbert Creek Estates, without prior screening and authorization by this Court;

3. For purposes of this injunction, an "Action" is any complaint, claim for relief, suit, controversy, cause of action, grievance, writ, petition, accusation, affidavit, deed, charge or any similar instrument, filed with any federal court, state court, probate court, local court, or executive, administrative or regulatory agency, and relating to plaintiffs' claims of ownership of, legal or equitable interest in, or rights of access to or from the real property now known as Gilbert Creek Estates;[6]

---

[5] Movants have requested "that the court hold a hearing to announce said sanctions in open court" to avoid any possible misunderstanding on the part of Johnson and Johnson-Young. (Doc. 157, at 11.) This request for hearing is **denied** for several reasons. First, the Court does not perceive how the sanctions could be explained any more clearly in a hearing than they are in this Order. ***Plaintiffs are responsible for reading this Order and for abiding by its terms, and they will be held accountable if they do not.*** Second, convening a hearing for the sole purpose of "announcing" sanctions previously documented in a written order would be both heavy-handed and extremely burdensome for plaintiffs (whom the Court understands to reside in Houston, Texas) and plaintiffs' counsel (who practices in Alexander City, Alabama), without countervailing benefits in terms of clarity of exposition. Third, given that plaintiffs are now represented by counsel, the Court understands and expects that plaintiffs' counsel will go over the specific proscriptions of this Order with his clients to ensure that they are fully apprised as to their rights and obligations, thereby obviating any meaningful risk of confusion by plaintiffs concerning what is expected of them henceforth.

[6] The legal description of such real property is as follows: That portion of the Southeast Quarter of the Northeast Quarter of Section 14, Township 2 South, Range 1 West, and that portion of the Southwest Quarter of the Northeast Quarter of Section 14, Township 2 South, (Continued)

4. The injunction in Paragraph 2 applies with equal force whether Johnson and Johnson-Young file such an Action themselves, or whether they draft, prepare and/or sign such an Action for filing by someone else (or take other steps to cause an Action to be filed by someone else);

5. Should Johnson and/or Johnson-Young wish to initiate a new Action within the scope of this injunction, they must file a proposed complaint (or other instrument described in Paragraph 3) with the Clerk of Court, U.S. District Court, Southern District of Alabama.[7] The Clerk will refer the proposed complaint to the undersigned for pre-filing screening. If, after review, this Court concludes that the proposed complaint states arguable claims for relief that are not obviously barred by principles of *res judicata*, then an order will be issued, authorizing plaintiffs to file that complaint in the forum of their choosing. If, however, pre-filing screening reveals that the proposed complaint does not state arguable claims for relief or is obviously irreconcilable with prior federal and state-court judgments entered against (or binding on) Johnson and Johnson-Young, then this Court will enter an order, notifying plaintiffs that they are enjoined from pursuing that complaint in any forum;

6. Nothing herein forbids plaintiffs from pursuing post-judgment or appellate remedies in this case without prior approval of the undersigned;

---

Range 1 West, lying East of the Old John Craft Highway and the Southern Railroad, excepting therefrom approximately 0.56 acres now or formerly owned by Jewel E. Gunter and 5 acres in the Southeast corner of the Southeast Quarter of the Northeast Quarter now or formerly owned by Johnson or a Burden. Said 5 acres being 330 feet East and West and 660 feet North and South as measured from the Southeast corner of the Northeast Quarter of said Section 14.

[7] Procedurally, plaintiffs should style their filing as a "Notice of Filing Proposed Complaint for Judicial Screening," should attach their proposed complaint as an exhibit to that Notice, and should file the Notice in this existing court file, styled *Reginald Johnson, et al., v. Randall Champions, et al.*, Civil Action 12-0334-WS-M, **not in a new case file**. If the undersigned approves the filing of the proposed complaint, and if plaintiffs wish to pursue that complaint in this District Court (as opposed to some other forum), then the Court will instruct the Clerk of Court to open a new civil action for processing of that complaint. But all requests for judicial approval of new Actions within the scope of this injunction should be filed in Civil Action 12-0334-WS-M, in the first instance.

7. A separate judgment will enter; and

8. There being no outstanding matters or issues joined in this action, the Clerk's Office is **directed** to close this file for statistical and administrative purposes.

DONE and ORDERED this 28th day of May, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE